We'll call the next matter on calendar, United States v. Noble. Don't be shy, just grab a seat. This is like Southwest Airlines. Yeah, and we don't bite. Yeah, well, no, they're still doing that. They haven't switched yet. For those of us who flew yesterday, we got the full Southwest experience. Another reason I fly overhaul. Yeah, I'm flying a lot like that. All right. All right, is everyone, everyone's good? All right, Mr. Hermanson, good to see you. You may proceed. It's good to see you as well, Your Honor. Kurt Hermanson on behalf of Mr. Noble. For three interrelated reasons, this court should reverse and remand for resentencing. First, to enforce Rule 32H. This court should hold that the district court erred by not giving notice of the legal ground for its upward departure, 5K2.8. Second, for guidance on remand, this court should hold that the district court erred by invoking Section 5K2.8 by expanding 5K2.8 to animals. Third, this court should reverse because the district court's statement of reasons contradicts its oral judgment. Counsel, can you help me with a second point on this is an animal-crushing statute, so it's essentially a cruelty to animals statute. How can there be any other victim but the animal in an animal cruelty statute? That's a great point. The statute itself includes the fact that animals are going to be tortured, abused, and so that's already part of the statute. And when the sentencing, so the sentencing guideline that applies has that baked in. And on top of that, when we look at what the parties recommended, the parties recommended four-level increase under 2G3.1B4. That four-level increase is for sadistic and masochistic conduct. So not only is it already part of the statute, it was contemplated by the parties. The parties agreed that it was duly accounted for with a four-level increase for sadistic. If 5K2 did not, the policy statement did not exist, would the district court be entitled to vary from the guideline range because it determines that the conduct here is so egregious that even the four-level enhancement is not sufficient punishment for the offense? Yes, the court could vary. And so that's the legalistic interesting part of this case is that courts can depart or they can vary. And as my friend's 28-J letter shows, the Sentencing Commission has decided to get rid of almost every single departure. So instead of a three-step process of figuring out the base fence level, figuring out the guideline range, and then looking at possible departures, and then moving on to the 3553A factors, which we call variances. So, yes, the first step and the most important step in sentencing is figuring out what the guideline range is. So does this case turn on the fact that the district court should have said what I'm doing here is varying, I'm not departing? Yes. Okay. So it's a semantics issue. Except that there's clearly established United States Supreme Court law and Ninth Circuit law saying that it makes a big difference. I think you'd have a much stronger argument. And I'm not saying you have a weak argument. I think you'd have an even stronger argument if the guidelines were still mandatory and not advisory. So, yes. I'm struggling with the district court made it very clear on the record that in however many years Judge McShane has been on the bench, this is the most egregious conduct that he's ever encountered. So, clearly, he was motivated by the cruelty and the actions of Mr. Noble and the people that make and solicit these kinds of videos. Correct. And it's – so after – so I'm going to say the name wrong, but Izzat-Kerry is the United States Supreme Court case that says that when you vary upward, you don't need to give notice. Right. So I don't agree with that opinion, but we're all bound by it because it comes from the United States Supreme Court. It seems inherently unfair for notice. What I'm really asking is how is he prejudiced under these circumstances by the failure to give the notice that 32H requires? So that question goes to my friend to establish – I'm going to ask him. Right. Well, it goes to him because he has the burden. To establish harmlessness, the government must show that it is, quote, more probable than not that the error did not affect the sentence. So in this – And you think, based on what the court said at sentencing, you don't think I can clearly discern what the court was thinking and fashioning an appropriate sentence in this case? This court has never done that. So the cases that this court would have to somehow distinguish, we have clearly established law in the circuit. Evans v. Martinez and Hinojosa v. Gonzalez are just two of them. So Evans v. Martinez and Hinojosa v. – Hinojosa-Gonzalez – so, sorry, it's not Evans v. Martinez. It's Evans-Martinez and Hinojosa-Gonzalez control, and they require that this court reverse and remand for resentencing. And the reason is clear, and it comes from United States Supreme Court law. And it goes back to the basics of sentencing. So you don't think there's a harmless error component in the analysis at all? I don't. And I think, at the very best, if this court decides that it's going to apply harmless error in this context – Essentially making a structural error. Correct. And it is. And if you look at the Supreme Court case – I'm not sure it is. It's error. There's no question about that. But the question is, how bad is the error, and is there prejudice? Right. Fair enough. So I see – I'm going to try to reserve two minutes. The United States Supreme Court cases we cite talk in terms of plain error, and they talk about the importance of how the sentencing guideline range is an anchor in the sentence. And if it's not correct, you reverse and remand for resentencing. You don't think that under a plain error analysis we still retain the authority to decide that we're not going to recognize the error on the facts of this case?  Here the parties agree that – In a plain error, on the fourth manifest injustice, we can decide it would not be manifestly unjust to impose a 48-month sentence on Mr. Knope. As Alex Krasinski said, the court would have to do a Miller v. GAMI analysis because we have – We argue all the time. We have clearly established – we have Supreme Court law and Ninth Circuit law that says, no, it's plain error, the error is plain, and the parties agree that it's – Yeah, I mean, am I wrong? We don't have to notice the error. We still have the discretion, as I understand the plain error doctrine, to conclude at step four we're not going to recognize the error. I don't think that's right, and – Well, we have to decide that if we don't address it, that it will result in a miscarriage of justice, and I'm having a hard time – Well, we have – it's de novo, though, Your Honor. The parties agree it's de novo. So I'm just pointing to the – so it's de novo review here, and I'm just pointing to the United States Supreme Court law that talks about when the sentencing guideline range is incorrectly calculated, which we have here, then you remand for resentencing because it is an anchor and it pulls the court. So it may feel like fait accompli to remand for resentencing, but that's the appropriate remedy. So I'd ask – Court reserved? Yes, please. Give him two minutes. He was one second off, but I'll give him two. May it please the Court, Will McLaren for the United States. I'm going to pick up where my colleague left off, and that was about error and whether there was error here. I think, to the Court's point about application of 32H, strict application of 32H seems to predate, in this circuit, Booker. He knows who Gonzalez, Evans-Martinez, and others are. Evans-Martinez, those were cases that weren't informed by a post-Booker sentencing regime. Once the courts were granted the significant discretion afforded in Booker, we see different outcomes. I'd point this Court to Cruz-Perez. I spent quite a bit of time in the brief talking about Cruz-Perez. That was a situation like this one where garden-variety sentencing considerations, this Court's words, were known to all involved and ultimately informed the sentence, which may have been a departure in this Court's analysis. That's what we have here. The garden-variety sentencing considerations underlying Judge McShane's sentence were both the deterrent value, which he spoke to at length, the need for a significantly deterrent sentence, as well as the nature and conduct of the offense itself, the extreme torture that underlied the videos in Mr. Noble's group. These were argued at length, litigated at length, in the parties' pre-hearing submissions. So whether there's a clear 32-H violation I think should be more closely inspected, and the government's position is there was not a clear 32-H violation. Turning now to the harmlessness of error. I do concede, though, that it would have been preferable for the Court to say at the outset, I am contemplating a departure under Policy Statement 5K2. Absolutely, Your Honor. I will note that prior to the parties' sentencing arguments at the time of sentencing, the Court did say, Mr. Hermanson, I want you to be aware that I am considering departing. Now, that was at the sentencing hearing itself, and 32-H speaks to pre-hearing submissions, but had the Court notified the parties of his awareness of 5K2.8, I think that would be far preferable, of course, Your Honor. It may obviate the need for us to be here in the first place. But as the Court acknowledged when my friend and colleague was arguing, Judge McShane made such a clear record, specifically most calculated cruelty I've seen in my 37 years on the bench, including state time, including murder. That leaves very little to the imagination about what may happen upon remand. And then I would say the other thing that leaves very little to the imagination is what was noted in the government's 28-J letter submitted last week. That is a relatively recently adopted guidelines amendment. The Commission is doing away with departures altogether, except for some very specific departures. But this one, 5K2.8, that will not be in Chapter 5 anymore as of November 1st of this year. And that is the Commission acknowledging something very fundamental that happened post-Booker, which is courts tend to vary largely for these strictures imposed by Rule 32. Those strictures don't apply for purposes of variances. Well, I guess the best example of that would be where the Court says, look, I just think this case is outside the heartland of the types of cases that the Commission had in mind when it established the range for this type of an offense. Which is precisely what this Court said here. I forget his exact words, but it was something to the effect of the sentencing guidelines simply do not contemplate an action like this. And I will note the guidelines here are the obscenity guidelines, not the torture or extreme cruelty guidelines. They have a sadistic and masochistic component, but I would argue that there's a spectrum of sadistic and masochistic conduct, and this is on the far outside of that, as acknowledged by the Court. So I think that's exactly right. And I would note that in this amendment that the Commission has proposed, they fold in a kind of final statement that says, we intend this to be outcome neutral. We would like the courts to continue considering these policy statements when applying variances, including the extreme conduct. It's going to make its way into some sort of guidelines appendix. So I think to Your Honor's point, that's exactly the intention of this amendment, and it's far more eloquent than anything I could say here. If the Court had any question about whether 5K2.8 could apply to the victim in this case, in this case a juvenile monkey and other animals depicted in these videos, I do not think it is a clear-cut argument that a victim can never be an animal, again picking up off of what was discussed prior to me standing up here. And I know the parties have parsed the language of the policy statement itself, but I read that language to focus on the conduct of the defendant more than on the impact on the victim. And Your Honor's reading is consistent with 90s-era law in this circuit, and that was Quintero. I pointed to that in the brief as well, which says precisely that. The focus is not on the characteristics of the victim. Quintero involved a deceased individual, so abuse to a corpse, but instead on the actions of the defendant themself. And the Tenth Circuit has since agreed with that in Hansen. I think that's a very clear reading. I also don't think the term victim should be narrowly construed. It should be the focus on the damaged or harmed entity as a result of the crime, which here it's hard to find anything but in the context of an 18 U.S.C. 48 violation, this animal-crushing statute. So unless the court has additional questions as to the definition of victim, I don't intend to take all my time. All right, thank you very much, counsel. Thank you.  I'll try to talk quickly. So 5K2.8 was never litigated below, so there's legal error. And the error is plain. Judge Tallman, this court has said that strict compliance is required with Rule 32. So we do have error in Herrera-Rojas. The Ninth Circuit vacated the sentence because the district court, because this court's precedence requires strict compliance with Rule 32. And what I'm saying as far as harmless error, this court's precedent also would, if the court thinks that it's a fait accompli and that the judge is going to give the exact same sentence, then remand to a different judge is appropriate. And for that, under Garden Shire. The fact that the court was particularly moved by the facts of this case doesn't mean that if we remand it with directions that the judge isn't going to comply with the direction. I just heard the government argue he's going to give the same sentence on remand. I'd be surprised if he did based on what he said, but I don't think that that's necessarily a basis for disqualification. I would cite the court to Garden Shire, 784 F. 3rd, 1277, at jump site 1283 through 84 for the appropriate remedy. Whether the court remands to Judge McShane or a different judge, I think Garden Shire supports remanding to a different judge because of that anchoring effect of applying the guideline incorrectly. And as far as my friend's citation to Contero, Contero is a dicta. I'm not sure the guideline was incorrectly applied. The question was whether you had adequate due process notice that the court was going to consider it. And we argue at length the correct statutory interpretation makes clear that... I don't think it's all that clear, and there's not much case law interpreting it, is there? There isn't. But if the court looks to Edling, Edling shows the proper... In Edling, they found that physical injury has to be physical injury to a human. And the statutory analysis they went through there is perfect. So here, first we start with the plain text. It doesn't say animal. It says human. So my friend is asking that it be expanded to include humans. No court has ever, in the 40 years that 5K 2.0 has existed, has ever applied it to animals. Every single guideline that refers to 5K 2.0 does not refer to animals. And the cross-references in 5K 2.0 have nothing to do with animals. How many Section 48 prosecutions have there been? So there are a number of co-defendants in this case who have been prosecuted. Not a single one of those has had an increase under 5K 2.8. This group of actors came to the attention of the authorities. There aren't that many cases, are there, under 48? I don't know how many cases there are, but there isn't a single one in the entire country where any judge has ever applied 5K 2.8 to an animal. Thank you. I appreciate the court's time. Thank you so much. Thank you to both of you for rebriefing your argument in this case. It's submitted.
judges: TALLMAN, OWENS, VANDYKE